## CITY OF CISCO v. WALLING et al.
### No. 2418.

Court of Civil Appeals of Texas. Eastland.

Nov. 12, 1943.

Rehearing Denied Dec. 10, 1943.

F. D. Wright, of Cisco, for appellant.

Ben G. O'Neal, of Wichita Falls, and Earl Conner, Sr., of Eastland, for appellees.

GRISSON, Justice.

The City of Cisco sought a personal judgment against Mrs. Mona Walling and her husband, C. O. Walling, for taxes alleged to be due the city on 40 x 90 feet out of lots 6 and 7 in block 32, City of Cisco, Eastland County, Texas, and foreclosure of a tax lien. Defendants answered that the lots were the separate estate of Mrs. Walling, that C. O. Walling had no interest therein; that said facts were shown by the deed to Mrs. Walling recorded in Eastland County; that for the years 1939, 1940 and 1941, the only years involved in this suit, the city had assessed said property at a valuation of $3,500 which was in excess of its market value; that the assessment was unconstitutional and void; that other like property in the

city was assessed at less than its market value; that Mrs. Walling was deprived of her constitutional right that taxation should be equal and uniform; that defendants were never notified that the valuation of said property would be raised; that the acts of the city in assessing the property as it did were arbitrary and discriminatory and the assessments illegal and void; that, in December, 1940, or January, 1941, Mrs. Walling tendered to the city $117 to be applied as follows: $67 to pay the 1939 taxes with penalty and accrued interest based on a valuation of $2,000 and $50 to pay the 1940 taxes based on the same valuation. That said valuation of $2,000 was fair and equitable and "in line" with the valuation fixed by the city on other properties in the city of the same kind and general location as defendant's property. That prior to January 15, 1942, Mrs. Walling tendered $50 in payment of the 1941 taxes, based on said valuation.

The jury found that the reasonable cash market value of the property in 1939, 1940 and 1941 was $4,000. That the board of equalization for each of said years "arbitrarily" fixed the assessed valuation on Mrs. Walling's property at $3,500. That said board in 1940 referred to and "relied upon" the assessed valuation for 1939, in fixing the valuation for 1940. That the board referred to and relied upon the assessed valuation for 1940 in fixing the valuation for 1941. That for 1939, 1940 and 1941 Mrs. Walling's property was not assessed by the city at a fair valuation as compared with the tax valuations placed by the city generally on other property in the same place with the defendant's property, to wit, block 32. In the judgment the court expressly found: "That the descriptions of * * * Mrs. Mona Walling's property in the assessments sued on herein for the years 1939 and 1940 are too indefinite and insufficient to identify" her property and that the tenders alleged were admitted by the plaintiff in open court.

The court held the city's assessments for 1939 and 1940 were illegal and void, and decreed that the city recover nothing for said years; that the tax assessment for 1941 was illegal and void, but that Mrs. Walling had rendered her property for said year at a valuation of $2,000, and the tax rate for that year being $2.50 on the $100 valuation, plaintiff was entitled to recover $50, but that Mrs. Walling had tendered said amount prior to the time said tax became delinquent and, thereafter, paid

same into the registry of the court as a tender of taxes due for 1941, therefore, it was ordered that execution not issue. The judgment provided that it was without prejudice to the right of the city to reassess the property for 1939 and 1940. The city has appealed.

The city bases its appeal upon the following propositions:

"1. There was no competent evidence showing that the Equalization Boards for any year arbitrarily fixed the assessed valuations, but the witnesses introduced by plaintiff show conclusively that the Equalization Boards each year considered every material feature in fixing the valuations.

"2. It was immaterial that the Equalization Boards for each year referred to and relied upon the assessed values for the preceding year.

"3. The assessment by the City of Cisco for the years involved at a higher valuation as compared with tax valuations by said City generally on the other properties in the same place with the Defendants' property, to wit: Block 32, was immaterial, in the absence of proof that the other buildings were of equal value."

Appellees' counter propositions, briefly stated, are:

1. The evidence sustains the findings and judgment.

2. The evidence shows conclusively that the city's description of the property for 1939 and 1940 is wholly insufficient to identify the property.

3. That the rate was in violation of the statutes and constitution.

4. That judgment for defendants was correct because there was no proof of a levy of taxes.

The evidence shows that prior to 1939 Mrs. Walling had always rendered the property at a valuation of $2,000 and it had been accepted at that figure and she had paid the taxes thereon. Due to a mistake of her agent in 1939 he failed to render the property to the city for taxation. The valuation of the property was raised by the city from $2,000 to $3,500. Under the same situation the valuation of $3,500 was again placed on the property by the city in 1940. In 1941 the property was rendered by Mrs. Walling for $2,000 and raised by the city to $3,500. Mrs. Walling had no notice of such raises.

The jury found that the city arbitrarily fixed the assessed valuation of Mrs. Wall-

ing's property. We overrule plaintiff's proposition that there was no competent evidence to support such finding. We think there are facts and circumstances in evidence that support said finding. As illustrative only, we call attention to the testimony of Mr. Heyser, who in 1941 was a member of the boards of equalization of both the city and school and who owned a business building in the same block in which Mrs. Walling's building is situated. He testified in substance that the rule was to fix a higher valuation for the school than for the city, because the city rate was $2.50 and the school rate was $1 per hundred dollars of valuation. His property was assessed by the school at a valuation of $1,800 and by the city at $1,000. Mrs. Walling's property was assessed by the school at $3,500 and by the city at $3,500. Mr. Heyser testified his building was worth $5,000, but that he rendered it to the city for $1,000 and to the school for $1,800, in 1941, and that his rendition was accepted by said boards. The jury found Mrs. Walling's property was worth $4,000. Taking the valuations as testified to by Mr. Heyser, his property for 1941 was assessed by the city at 20 per cent of its value, while Mrs. Walling's property was assessed by the same boards at 58⅓ per cent of its value. Taking the market value of Mrs. Walling's property, as found by the jury, and the value of Mr. Heyser's property, as testified to by him, we find that Mr. Heyser's property was assessed at 20 per cent of its market value and Mrs. Walling's property was assessed at 87½ per cent of its market value. The testimony of this witness is selected because it is very similar to the fact situation in Weatherly Independent School District v. Hughes, Tex.Civ.App., 41 S.W.2d 445, 446, wherein a finding of an arbitrary discrimination against the taxpayer was upheld. The properties in block 32 were assessed by school and city as follows:

| "Pratt property | School | $5,000 | City | $4,000 |
| --- | --- | --- | --- | --- |
| Edward's " | " | $2,500 | " | $2,000 |
| Johnston " | " | $1,800 | " | $1,000 |
| Gray " | " | $1,500 | " | $1,000 |
| Heyser " | " | $2,000 | " | $1,000 |
| Walling " | " | $3,500 | " | $3,500" |

The city filed its suit to collect taxes, penalties and interest alleged· to be due, among other years, for 1941 on January 15, 1942. This was before the taxes for 1941 became delinquent. See Garza v. City of San Antonio, Tex.Com.App., 231

S.W. 697, 699, and Clegg v. State, 42 Tex. 605, 611, wherein the Supreme Court said "Nor does the bare fact of the assessment of the tax authorize suit for its collection. This cannot be done until the taxpayer is in default by his failure to pay his taxes within the time prescribed by the law and regulating its collection."

In King v. Falls County, Tex.Civ.App., 42 S.W.2d 481, 483 (opinion by Judge Alexander), a petition by a taxpayer seeking to restrain the issuance of road bonds, which alleged that the commissioners' court "arbitrarily" found that a road bond election would be for the benefit of all taxable property in the district, was held not to be subject to a general demurrer, despite the facts that such matters had been committed to the discretion of the commissioners' court and that ordinarily a district court could not review such decisions. The term "arbitrarily" is therein defined. The court said:

"Where the acts of the commissioners' court, in matters requiring the exercise of judicial discretion, are the result of purely arbitrary action on their part, and not the result of a judicial determination of the issue, it becomes the duty of the district court, under its supervisory power, to set aside such acts. In the case of Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, 73, writ refused, it is said: 'For all such arbitrary acts [of the commissioners' court] performed in the exercise of judicial power are fraudulent, and voidable, in the proper tribunals of the state, by direct proceedings to set them aside.'

"In the case of Allen v. Emery Ind. School District, Tex.Civ.App., 283 S.W. 674, 676, it is said: 'A merely and purely arbitrary or capricious valuation made by such tribunal [a tax board] disproportionate to the property's value is ground for objection and cause for interfering with its action.' "

The jury's finding that the city's board of equalization "arbitrarily" fixed its valuation of Mrs. Walling's property sustains the trial court's action in denying plaintiff a judgment based on such assessments. Accepting said finding as true, the evidence shows conclusively that an unjust discrimination against Mrs. Walling resulted.

See 40 Tex.Jur. 160; Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, writ refused; Garza Land & Cattle Co. v. Redwine Independent School Dist., Tex. Civ.App., 282 S.W. 905, 908; Richardson v. State, Tex.Civ.App., 53 S.W.2d 508, 509;

Howth v. French Independent School Dist., Tex.Civ.App., 115 S.W.2d 1036, affirmed 134 Tex. 211, 134 S.W.2d 1036; Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 560, 120 S.W. 852; Poteet, Judge, v. W. T. Waggoner Estate, Tex.Civ.App., 96 S.W. 2d 405, 407; Randals v. State, Tex.Civ. App., 15 S.W.2d 715; Nederland Independent School District v. Carter, Tex.Civ. App., 93 S.W.2d 487; Brown v. First National Bank of Corsicana, Tex.Civ.App., 175 S.W. 1122, 1126; Norris v. City of Waco, 57 Tex. 635; 61 C.J. 856; State v. Houser, 138 Tex. 28, 33, 156 S.W.2d 968.

 The city's assessment lists for 1939 and 1940 described Mrs. Mona Walling's property only as follows:

"Owner     C. O. Walling
Address     Burkburnett, Texas

| Size-Lots | Block | Sub. | Addition | Value | |
|---|---|---|---|---|---|
| Part of lots 6 & 7 | 32 | | | 3500 | ass. |
| Unrendered | | | | 3500 | 4000 |

C. O. Walling was not and had never been the owner. Mrs. Mona Walling's ownership was shown by the deed records of Eastland County. J. B. Pratt also owned "part of lots 6 & 7, Block 32." We think the description is insufficient to identify the property that belongs to Mrs. Walling. See House v. Stone, 64 Tex. 677, 682, where the Supreme Court said: "The lots of land must be definitely and distinctly described, and parol proof cannot supply the deficiency in the description or boundaries. These must be ascertained from what is written. The question is not one of intention, but one of fact—what did the assessors do? Which is the specific lot on which the tax is laid? These questions must be answered from the record."

See, also, State v. Farmer, 94 Tex. 232, 59 S.W. 541; Electra Ind. School Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645, 650; Garza v. City of San Antonio, Tex.Com.App., 231 S.W. 697, 699; Slaughter v. City of Dallas, 101 Tex. 315, 316, 107 S.W. 48.

In State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076, 1078, it was held that where a board of equalization arbitrarily fixed the value and an illegal assessment based thereon is afterward set aside, that the taxpayer's original rendition prevails as a basis on which the taxes are to be paid. The trial court in the instant case followed said decision and rendered judgment for the plaintiff for $50, as the taxes due for 1941 on defendant's rendition with a valuation of $2,000; in 1943 the Supreme Court, in an opinion by Judge Slatton, overruled the holding in the Richardson case and held that it is error under such circumstances to render judgment for taxes upon the basis of the owner's rendition; that the proper procedure is provided by Article 7346, which provides that when a previous assessment has been declared invalid by a district court in a suit to enforce the collection of taxes the proper authority should thereafter properly reassess the property. Electra Ind. School Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645. However, we do not understand that the city is complaining of the judgment in this respect.

The judgment is affirmed.